IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00228-CMA-MJW

KELLY DALEY,

Plaintiff,

v.

ALPINE UROLOGY, P.C., a Colorado professional corporation,

Defendant.

---

**RECOMMENDATION ON
DEFENDANT'S RENEWED MOTION TO DISMISS (Docket No. 10)
and
ORDER ON
PLAINTIFF'S OPPOSED MOTION TO AMEND COMPLAINT (Docket No. 8)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was referred to the undersigned by and Order Referring Case entered by Judge Christine M. Arguello on April 1, 2015 (Docket No. 18).

Plaintiff, Kelly Daley, alleges the following in her Complaint (Docket No. 1). Plaintiff was an employee of defendant, Alpine Urology. Plaintiff worked over forty hours per week, did not receive lunch breaks, and was not paid overtime. On August 6, 2014, she met with the manager (Joe Kauffman), receptionist (Shelly Wycoff), and medical assistant (Emma Chavez) about overtime pay and pay periods versus pay weeks and about Dr. Kefer not allowing lunches and breaks. The next day, Kauffman sent plaintiff an e-mail stating he looked into plaintiff's overtime, and she was missing 4.5 hours, but those hours were paid. He stated that a $20 Starbucks gift card should

2

cover the .5 hours that were actually owed.  Plaintiff, however, had calculated approximately 49 hours of unpaid overtime, and she told Kauffman she was going to contact the Labor Board.  The next day, August 8, 2014, Kauffman sent plaintiff an e-mail stating he was upset about the conversation that occurred the day before regarding plaintiff going to the Labor Board.

On September 9, 2014, Kauffman came into the office and stated he wanted to make plaintiff the office Team Leader.  Later that month, on September 24, plaintiff met with the billing manager (Kim Price) who told plaintiff about overhearing that Kauffman and Kefer were trying to get plaintiff to quit because she had contacted the Labor Board. The next day, plaintiff again e-mailed the Labor Board about her employment and being retaliated against for contacting them.  That same day plaintiff text messaged Kefer about her meeting with Price.  Kefer responded with a text message, "Did you tell Joe that you would report our group to the Department of Labor re: overtime, because last year I paid you more than you worked to make sure that would not be a problem." Plaintiff responded by asking if they could talk when Kefer arrived at work.

On October 2, 2014, Kefer called plaintiff into his office and asked if she had contacted the Labor Board.  Plaintiff told him she had, and he responded that plaintiff was committing fraud.  He stated that plaintiff's Christmas bonus was in lieu of him paying plaintiff overtime and then told plaintiff several times to get the "f*** out" of his office or he would call security.  Plaintiff told Kefer she would call security for him because of the way he was treating her and that she was in fear.  Plaintiff then left the office and went to get her things.  Kefer told her that anything she left behind would become defendant's property.  After leaving Kefer's office, plaintiff texted Kauffman.

3

Kauffman called plaintiff and told her that Kefer had fired plaintiff, but she would be given two weeks of severance, and she "was not allowed" to file for unemployment because they gave her severance.

On October 4, 2014, Kauffman texted plaintiff, questioning her unemployment claim.  Plaintiff told him she filed for unemployment despite what he had told her about not being eligible.  Kauffman responded, "I told you I was not a lawyer, I guess I will see you in court[.  A] judge will determine whether or not you were treated fairly.  Please lose my number."  (Docket No. 1 at 6, ¶ 46).

Plaintiff brings the following four claims for relief: (1) violation of the Fair Labor Standards Act of 1938 ("FLSA") and failure to maintain records; (2) violation of the Colorado Wage Act ("CWA") and failure to maintain records; (3) unjust enrichment; and (4) termination in violation of public policy.  She seeks monetary damages.

Defendant filed a motion to dismiss (Docket No. 6), and nine days later plaintiff filed an Opposed Motion to Amend Complaint (Docket No. 8),[1] which has been referred to the undersigned.  No motion to amend, however, was needed inasmuch as plaintiff's amendment was permissible as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(B).  Plaintiff tendered a proposed Amended Complaint with her motion (Docket

---

[1]Plaintiff's counsel notes in the motion under the Conferral section that on February 19, 2015, defendant e-mailed plaintiff requesting plaintiff amend her complaint, giving a deadline of February 23, 2015, however noting that the Answer was not due until March 3, 2015.  Plaintiff's counsel explained that she was going into a week-long jury trial starting on February 23, 2015, and would not be able to respond or amend until March 2, 2015.  She further stated she would not object to an extension of time for defendant to file its answer if defendant so wished.  Instead, however, defendant filed its Motion to Dismiss on February 23, 2015, and opposes plaintiff's motion to amend the Complaint.  (Docket No. 8 at 1).

4

No. 8-1) and also filed a Notice of Filing First Amended Complaint pursuant to Fed. R.

Civ. P. 15 and D.C.COLO.LCivR 15.1 which underlines the text that was added.

Plaintiff notes in the Notice that while defendant initially opposed the filing of an

amended complaint, defendant has now stated it does not oppose the relief requested.

In view of the above, plaintiff's motion shall be granted, and the tendered Amended

Complaint (Docket No. 8-1) shall be accepted for filing.

Defendant filed a Renewed Motion to Dismiss (Docket No. 10) in which

defendant seeks to dismiss plaintiff's Amended Complaint (which at that point had

merely been tendered) pursuant to Fed. R. Civ. P. 12(b)(6).  Subsequently, during a

Scheduling Conference on April 7, 2015, defendant withdrew its original Motion to

Dismiss (Docket No. 6).  The Renewed Motion to Dismiss is now before the court for a

report and recommendation.  Plaintiff filed a Response (Docket No. 13), and defendant

filed a Reply (Docket No. 17).  The court has carefully reviewed these motion papers as

well as applicable Federal Rules of Civil Procedure and case law.  In addition, the court

has taken judicial notice of the court file.  The court now being fully informed makes the

following findings, conclusions, and recommendation.

Defendant seeks dismissal of the Amended Complaint on the following two

grounds.  First, defendant contends that the pleading fails to establish defendant's

FLSA liability because it does "little more than parrot the statutory language of the

FLSA" and fails to provide the necessary factual details to support plaintiff's federal

claim.  Second, defendant asserts that if this court dismisses plaintiff's FLSA claim, then

under 28 U.S.C. § 1367(c)(3), the court has sufficient reason to decline to exercise

supplemental jurisdiction over the plaintiff's remaining state law claims.

5

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The Court's function on a Rule 12(b)(6) motion . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim." Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Investment II, LLC, 2014 WL 4400764, at *2 (D. Colo. Sept. 5, 2014). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974).

6

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the Twombly/Iqbal standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

"A plaintiff may prove eligibility under the FLSA 'by asserting sufficient facts to plausibly state a claim either (1) that [she], individually, was engaged in commerce or (2) that [the employer] is an enterprise engaged in commerce." Topp v. Lone Tree

Athletic Club, Inc., 2014 WL 3509201, at *6 (D. Colo. July 15, 2015) (quoting Reagor v.

Okmulgee Cnty. Family Res. Ctr., 501 Fed. Appx. 805, 808 (10th Cir. 2012)).  See Tony

& Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 n.8 (1985) ("Employment

may be covered under the [FLSA] pursuant to either 'individual' or 'enterprise'

coverage."); Tripodi v. Microculture, Inc., 397 F. Supp.2d 1308, 1313 (D. Utah 2005)

("Coverage under the overtime provisions of the FLSA exists: if *either* the employee is

engaged in commerce . . . or the employer is an enterprise engaged in commerce . . . .")

(emphasis in original).  "Under the FLSA, '[c]ommerce' means trade, commerce,

transportation, transmission, or communication among the several States or between

any State and any place outside thereof.'"  Topp, 2014 WL 3509201, at *6 (quoting 29

U.S.C. § 203(b)) (internal quotations omitted).

Here, the court has very carefully reviewed the Amended Complaint and the

defendant's allegations in its renewed motion concerning the alleged pleading

deficiencies.  More specifically, defendant asserts that the pleading merely parrots the

FLSA statutory language, fails to provide the necessary facts that would establish that

defendant is "an enterprise engaged in commerce or in the production of goods for

commerce," and thus fails to establish that defendant is, as an enterprise, subject to the

requirements of the FLSA.  In addition, defendant contends that plaintiff fails to establish

individual coverage under the FLSA because she fails to allege facts that she regularly

uses the instrumentalities of interstate commerce.  Therefore, defendant argues that

plaintiff has failed to state an FLSA claim.

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." "Free Speech v. Federal Election Comm'n, 720 F.3d 788, 792 (10th Cir. 2013) (quoting Iqbal, 556 U.S. at 678).  When viewed with the scrutiny required by Iqbal and Twombly, the court finds that the Amended Complaint adequately pleads enough facts to put defendant on notice and to state plaintiff's claims for relief that are plausible on its face and complies with Rule 8(a)(2).  While the pleading is not a model pleading, is a bit redundant, and is not very generous with factual details, it provides just enough to survive defendant's motion to dismiss.  With regard to the defendant employer being an enterprise engaged in commerce, the Amended Complaint avers that:

> [u]pon information and belief Defendant is engaged in interstate commerce by buying/obtaining medical equipment through interstate commerce, performing procedures on patients from other states, taking and receiving long distance phone calls, and sending and receiving long distance faxes.
>
> . . .
>
> . . . Upon information and belief the annual gross sales volume of the Defendant was in excess of $500,000 per annum.  Defendant performs specialized urologic services and procedures on [sic] Plaintiff which produces a gross annual sales volume over $500,000 per annum.
>
> . . . Defendant states on its website that it uses the Da Vinci minimally invasive surgical system for all urinary tract surgeries.  Upon information and belief this equipment was purchased through interstate commerce.
>
> . . . Upon information and belief Defendant purchases and receives equipment through interstate commerce.  Upon information and belief Defendant receives and sends faxes long distance; has patients from outside of the state, and makes and receives long distance phone calls.
>
> . . .
>
> . . . Upon information and belief Defendant bought and received medical equipment through interstate commerce.  Upon information and belief Defendant treated patients from other states.  Upon information and belief

9

Defendant made, sent and received long distance calls and faxes.

. . . Also, based upon information and belief, the annual gross
revenue of Defendant was in excess of $500,000 per annum during the
relevant time periods.  Upon information and belief, Defendant provides
specialized medical procedures on patients for an annual gross revenue in
excess of $500,00 [sic] per annum. . . . .

(Docket No. 9-1 at 1, 2, 4).  Alternatively, plaintiff pleads individual coverage by

averring:

. . . Plaintiff worked as a Medical Assistant at Alpine Urology, P.C.  She
made and received long distance phone calls.  She sent and received long
distance faxes.  She received equipment through interstate commerce.
Plaintiff also may have worked with patients from other states who
obtained services through Alpine Urology. . .

(Docket No. 9-1 at 2).

Plaintiff has plead more than just the statutory words and has given examples of

defendant's connection to interstate commerce.  Accordingly, the court recommends

that the motion to dismiss be denied.  "[A] well-pleaded complaint may proceed even if it

strikes a savvy judge that actual proof of those facts is improbable, and that recovery is

very remote and unlikely."  Dias v. City & County of Denver, 567 F.3d 1169, 1178 (10th

Cir. 2009) (quoting Twombly, 550 U.S. at 556).

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that the Plaintiff's Opposed Motion to Amend Complaint (Docket No.

8) is **granted**, and the tendered Amended Complaint (Docket No. 8-1) is accepted for

filing.  It is further

**RECOMMENDED** that the Renewed Motion to Dismiss (Docket No. 10) be

**denied**.

10

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: June 23, 2015          s/ Michael J. Watanabe
    Denver, Colorado          Michael J. Watanabe
                       United States Magistrate Judge